# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

February 4, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**WEST VIRGINIA OFFICE OF
INSURANCE COMMISSIONER**
Commissioner Below, Petitioner

**and**

**KIMBALL COAL, INC.,**
Employer Below, Petitioner

**vs.)    No. 14-1246** (BOR Appeal No. 2049476)
                            (Claim No. 910012158)

**JAMES W. LOWERY,**
Claimant Below, Respondent

## MEMORANDUM DECISION

Petitioner West Virginia Office of the Insurance Commissioner, by Dawn E. George, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. James W. Lowery, pro se, filed a timely response.

This appeal arises from the Board of Review's Final Order dated October 29, 2014, in which the Board reversed the May 8, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's August 13, 2013, decision to deny the request from Mr. Lowery's treating physician for authorization of the medications Neurotin 800 mg, Ultram 50 mg, Vistaril 25 mg, and Lodine XL. The Board of Review authorized Mr. Lowery's request for all the medications except for Ultram 50 mg. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these

1

reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Lowery, a coal miner for Kimball Coal, Inc., sustained a compensable lumbar spine strain on September 17, 1990. Mr. Lowery ultimately received a 5% permanent partial disability award for the injury. Mr. Lowery also received a permanent total disability award on March 20, 1995, for the multiple injuries he sustained while being a coal miner. On December 4, 2012, Mr. Lowery underwent an independent medical evaluation by Jerry Scott, M.D. Dr. Scott's range of motion study demonstrated forward flexion of twenty degrees, extended zero degrees and lateral ten degrees bilaterally. Mr. Lowery reported his range of motion was pain limited. Dr. Scott indicated that Mr. Lowery's subjective complaints were not related to the compensable injury in the instant claim. He indicated that Mr. Lowery's complaints were more likely secondary to a history of degenerative disk disease and that the treatment rendered to Mr. Lowery was not related to his compensable injury. Dr. Scott suggested that Mr. Lowery's lumbar sprain, experienced in 1990, should have resolved by this point in time.

Mr. Lowery reported to the emergency room at Princeton Community Hospital on March 14, 2013. The report indicates that Mr. Lowery complained of low back pain radiating into the back of his thighs. It also noted an compression fracture of T8 and L4 in 1975. Mr. Lowery indicated he had experienced back pain since that injury. An x-ray examination was interpreted as revealing L5-S1 degenerative changes and subluxation at L5. An old mild compressive deformity of the L4 vertebral body was identified. Mr. Lowery was diagnosed as experiencing lumbar radiculopathy and chronic low back pain. He was discharged with a prescription of medication for his symptoms and instructions to follow-up with a neurosurgeon. Attached to the report were radiology reports addressing Mr. Lowery's cervical spine and thoracic spine. In the cervical spine he was diagnosed as suffering from diffuse cervical spondylosis. In the thoracic spine he was diagnosed with having dextroconvex scoliosis with hyperkyphotic curvature, likely chronic in nature. A report from Mr. Lowery's treating physician, Robert Kropac, M.D., dated March 27, 2013, indicated that Dr. Kropac disagreed with Dr. Scott's conclusions. Dr. Kropac commented that Mr. Lowery had no symptoms prior to his worker's compensation injuries, and disagreed that Mr. Lowery had pre-existing arthritis. He believed that Mr. Lowery was in need of ongoing treatment as a result of the compensable injury and required medication for control of his symptoms. He believed that Mr. Lowery would continue to need additional treatment into the future.

On August 13, 2013, the claims administrator denied the request for authorization of the medications Neurontin 800 mg, Ultram 50 mg, Vistaril 25 mg, and Lodine XL based upon Dr. Scott's independent medical evaluation. Mr. Lowery timely protested the Order. On November 7, 2013, Mr. Lowery had an MRI of his lumbar spine. It was interpreted as revealing mild spinal stenosis at L2-3, moderate spinal stenosis at L3-4, severe spinal stenosis at L4-5 resulting from a combination of congenitally narrow spinal canal, discogenic disease, and ligamentous hypertrophy together with severe bilateral neuroforaminal stenosis at the L4-5 and L5-S1 levels.

On January 13, 2014, Mr. Lowery was seen again by Dr. Kropac. Dr. Kropac performed a physical examination of Mr. Lowery and diagnosed him as suffering from cervical disc

herniation without radiculopathy, lumbosacral musculoligamentous strain, and old compression fracture at T8. He noted that the most recent MRI did not show a disc herniation but did demonstrate degenerative changes, which he believed was related to his compensable injury of 1990. He indicated that Mr. Lowery had no history of any prior back problems prior to 1990, and based upon that understanding and the absence of any other information, he related Mr. Lowery's low back complaints to the compensable injury.

At a hearing on March 17, 2014, Mr. Lowery, pro se, testified that he was receiving permanent total disability for the combined effects of his occupational injuries and diseases. He testified that he was having problems with his neck, between his shoulder blades, and his lower back, running into his hips and legs. Mr. Lowery confirmed that he had experienced a substantial back injury in 1975, at the L4 level. He testified that he worked for sixteen years after he broke his back for the first time. Mr. Lowery testified he had originally been treated by Roy R. Raub, M.D., and Clifford Carlson, M.D., before being referred to Dr. Kropac. Specifically Mr. Lowery submitted a treatment note from Dr. Carlson dated December 22, 2006, which indicated that Mr. Lowery was prescribed Vistaril, Lyrica, Lodine XL, Ultram, and Lortab for severe to very severe pain. Mr. Lowery also testified that it was his understanding that Dr. Kropac was treating him for all three of his claims. Dr. Kropac continued prescribing Mr. Lowery various medication for pain as well as anti-inflammatory drugs. Mr. Lowery testified that he hurt the worst between his shoulder blades running up to his neck. On cross examination, Mr. Lowery represented that he had not experienced any injuries since 1990. He testified that since 1990 his pain had increased. He denied having had surgery. Mr. Lowery represented that he had seen John Schmidt, M.D., a neurosurgeon, for a second opinion regarding his back, but did not receive more than an evaluation.

The Office of Judges determined that the specified medications were not medically related and reasonably required to treat his September 17, 1990, lumbar strain. The Office of Judges noted that the main question was whether Mr. Lowery's present complaints of pain were related to his compensable injury of September 17, 1990. The Office of Judges determined that because Mr. Lowery's cervical spine, his shoulders, and mid back are unrelated to the compensable injury sustained on September 17, 1990, that medications should not be approved for those areas. The Office of Judges chose not to rely on Dr. Kropac's report because Dr. Kropac did not indicate he had any knowledge of Mr. Lowery's low back injury in 1975, which Mr. Lowery himself characterized as a broken back. Mr. Lowery represented this substantial injury to the emergency room in 2013 and again at his hearing. Because of the more serious injury, the Office of Judges concluded Dr. Kropac's assertion that Mr. Lowery's degenerative disc disease was attributable to the instant injury was erroneous. Therefore, the Office of Judges adopted the report of Dr. Scott, which found Mr. Lowery to be at his maximum degree of medical improvement.

The Board of Review reversed the Office of Judges' Order and found that the requested medications, with the exception of Ultram, were medically related and reasonably required to treat his injuries. The Board of Review pointed out that Mr. Lowery was granted a permanent total disability award by the Office of Judges on March 20, 1995. Then on December 22, 2006, Dr. Carlson indicated that Mr. Lowery was taking the medications Vistaril, Lyrica, Lodine XL,

Ultram, and a limited dose of Lortab. On October 18, 2007, Dr. Kropac reported that Mr. Lowery had been treated by Dr. Carlson until Dr. Carlson closed his office in March of 2007. Dr. Kropac evaluated Mr. Lowery and recommended that he continue medications, including non-steroidal anti-inflammatory medication, analgesic medication, muscle relaxants, and possible medications for control of neuropathic pain. On March 27, 2013, Dr. Kropac opined that Mr. Lowery is in need of ongoing treatment as a direct result of his compensable injury, which treatment will require continued use of Neurontin, Ultram, Vistaril and Lodine. On January 13, 2014, Dr. Kropac indicated that Mr. Lowery reported that the pain is most tolerable with the use of the medications. Because of the seriousness of the injury and the fact that the medications are working, the Board of Review concluded the medications were medical related and reasonably required to treat his injuries. The Board of Review noted that Ultram is a controlled substance and under West Virginia Code of State Rules §§ 85-20-53 through 85-20-62 (2006), certain documentation was required to support authorization for the medication beyond the prescribed time limits. The Board of Review found that Dr. Kropac's reports and the other evidence do not provide the documentation necessary for the authorization of the medication Ultram.

We agree with the Board of Review. Mr. Lowery is permanently and totally disabled as a result of his compensable injuries. Dr. Carlson, his treating physician, continued to report that Mr. Lowery needed the requested medications up until his practice closed. After the closure, Mr. Lowery was in need of another physician. Mr. Lowery was referred to Dr. Kropac who also opined he needed the requested medications. However, Dr. Scott believed that Mr. Lowery was at his maximum degree of medical improvement and that any other medications were needed because of his pre-existing degenerative disc disease. Dr. Kropac completely disagreed with Dr. Scott's analysis. He noted that degenerative disc disease was not seen on the MRI images. Dr. Carlson and Dr. Kropac have consistent opinions and have far more evidence based upon their exposure to Mr. Lowery's condition, its development, and his treatment. Dr. Scott only examined Mr. Lowery on a single occasion. Because the weight of the evidence indicates Mr. Lowery needs the requested medications, the Board of Review was not in error for overturning the Office of Judges' Order.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  February 4, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

4